STATE of Wisconsin, Plaintiff-Respondent,

v.

Armando P. RODRIGUEZ, Defendant-Appellant.†

Court of Appeals

*No. 97–3097–CR. Submitted on briefs May 11, 1998.—Decided August 20, 1998.*

(Also reported in 585 N.W.2d 701.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

VERGERONT, J. Armando P. Rodriguez appeals a judgment of conviction for second-degree sexual assault and an order denying his postconviction motion for withdrawal of his *Alford* plea.[1] Rodriguez contends that he is entitled to withdraw his plea because the plea was not voluntarily, knowingly and intelligently

---

[1] An *Alford* plea is a plea in which the defendant pleads guilty while still maintaining his or her innocence. *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 616, 630–32, 579 N.W.2d 698, 706 (1998).

entered since he misunderstood his citizenship status and the likelihood of being deported. We conclude that because Rodriguez's misunderstanding is related to a collateral consequence of conviction, and because it resulted from his own mistaken assumptions, that misunderstanding does not render his plea constitutionally infirm. We therefore affirm.

## BACKGROUND

Rodriguez was charged with second-degree sexual assault as a habitual offender, in violation of §§ 940.225(2)(d) and 939.62(2), STATS.; criminal trespass in violation of § 943.14, STATS.; and criminal damage to property in violation of § 943.01(1), STATS. Rodriguez entered an *Alford* plea to a reduced charge of second-degree sexual assault. At the plea hearing, the trial court told Rodriguez, "You understand that if you are not a citizen of the United States you are advised that a plea of guilty or no contest may result in your deportation, your exclusion from admission to this country, or a denial of naturalization under federal law?" Rodriguez responded, "I am a citizen." The trial court sentenced Rodriguez on January 17, 1997, to an indeterminate sentence not to exceed ten years.

On July 21, 1997, Rodriguez filed a postconviction motion seeking to withdraw his *Alford* plea because the plea was not voluntarily and knowingly entered. Rodriguez asserted that his plea was based on his mistaken understanding that he was a United States citizen, but he is not a citizen and the Immigration and Naturalization Service (INS), Deportation Branch, filed a notice of detainer, dated March 31, 1997, effective upon his release from custody. The notice stated that the INS was undertaking an investigation to determine whether Rodriguez was subject to deportation. Rodri-

guez asserted that, had he known that he would be subject to the possibility of deportation, he would not have entered the plea.

Rodriguez testified at the evidentiary hearing on his motion. He explained why he believed he was a citizen and stated that, had he known he could be deported by entering the plea, he would not have done so because by going back to Cuba he could lose his life, and he would lose his family in America—his daughter, girlfriend and his Cuban family who live in the United States. The trial court denied the motion, concluding that Rodriguez had not made a prima facie case that the requirements of § 971.08, STATS., were violated when his plea was taken and had not asserted that he did not know or understand the information that was provided at the plea hearing. The court also ruled that Rodriguez had not proved that withdrawal of the plea was necessary to correct a manifest injustice. The court found that Rodriguez's belief concerning his citizenship was unreasonable, that his statements as to why he believed he was a citizen were self-serving, and that some of his testimony indicated that he was not a citizen.[2] The court specifically referred to these portions of his testimony: Rodriguez testified that the INS previously initiated a deportation proceeding against him and, although he was not deported, he was never told that he was not deported because he was a citizen; he never took an oath as a citizen; and Milwaukee authorities told him what he had to do to get a green card, but he never did anything to obtain it.

---

[2] Rodriguez emphasizes that the trial court did not find that Rodriguez did not actually believe he was a citizen when he stated at the plea hearing that he was. We assume without deciding that Rodriguez did believe at the time of the plea hearing that he was a citizen.

## DISCUSSION

On appeal Rodriguez contends the trial court applied an incorrect standard of law in denying his motion, and he is entitled to withdraw his plea because he did not have an accurate understanding of the consequences of his plea.

The decision whether to permit withdrawal of a guilty or no contest plea is a matter committed to the trial court's discretion. *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 616, 636, 579 N.W.2d 698, 708 (1998). We may reverse the trial court's denial of Rodriguez's motion to withdraw his *Alford* plea only if the trial court erroneously exercised its discretion. *Id.* We must affirm the court's discretionary decision if it was made upon the facts of record and in reliance on the appropriate and applicable law. *Id.*

After sentencing, a defendant who seeks to withdraw a guilty or no contest plea carries a heavy burden. *Id.* The defendant must establish by clear and convincing evidence that the trial court should permit the defendant to withdraw the plea to correct a manifest injustice. *Id.* If a defendant establishes he or she was denied a relevant constitutional right, withdrawal of the plea is a matter of right. *State v. Bangert* 131 Wis. 2d 246, 283, 389 N.W.2d 12, 30 (1986). The constitution requires that a plea be voluntarily, knowingly and intelligently entered and a manifest injustice occurs when it is not. *See Warren,* 219 Wis. 2d at 636–37, 579 N.W.2d at 708.

Whether a plea was voluntarily, knowingly and intelligently entered is a legal issue, which we review de novo. *Bangert,* 131 Wis. 2d at 283–84, 389 N.W.2d at

30. However, we accept the trial court's finding of evidentiary or historical facts on this point unless they are clearly erroneous. *Id.*

Section 971.08, STATS., sets forth the requirements a trial court is to follow in accepting a plea of guilty or no contest:

> **Pleas of guilty and no contest; withdrawal thereof.** (1) Before the court accepts a plea of guilty or no contest, it shall do all of the following:
>
> (a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted.
>
> (b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.
>
> (c) Address the defendant personally and advise the defendant as follows: "If you are not a citizen of the United States of America, you are advised that a plea of guilty or no contest for the offense with which you are charged may result in deportation, the exclusion from admission to this country or the denial of naturalization, under federal law."
>
> (2) If a court fails to advise a defendant as required by sub. (1) (c) and a defendant later shows that the plea is likely to result in the defendant's deportation, exclusion from admission to this country or denial of naturalization, the court on the defendant's motion shall vacate any applicable judgment against the defendant and permit the defendant to withdraw the plea and enter another plea. This subsection does not limit the ability to withdraw a plea of guilty or no contest on any other grounds.

Although § 971.08, STATS., is not a constitutional imperative, this statutory procedure nevertheless is

designed to assist the trial court in making the constitutionally required determination that a defendant's plea is made voluntarily, knowingly and intelligently. *Bangert*, 131 Wis. 2d at 261, 389 N.W.2d at 20. The *Bangert* court established that when a defendant makes a prima facie showing of a violation of § 971.08 or a failure of the court to meet other enumerated obligations, including the duty to inform the defendant of his or her constitutional rights, and the defendant alleges that he or she did not know or understand the information that should have been provided at the plea hearing, the burden shifts to the State to establish by clear and convincing evidence that the plea was nevertheless voluntarily, knowingly, and intelligently entered. *Bangert*, 131 Wis. 2d at 274–75, 389 N.W.2d at 26.

The version of § 971.08 considered by the court in *Bangert* did not contain para. (1)(c) or subsec. (2) relating to deportation. *See Bangert*, 131 at 260, 389 N.W.2d at 20. Those sections became effective on April 24, 1986. *See State v. Santos*, 136 Wis. 2d 528, 531 n.3, 401 N.W.2d 856, 858 (Ct. App. 1987); 1985 Wis. Act 252. Since *Bangert* was decided, we have held that when a defendant claims that notice of possible deportation is not given as required by § 971.08(1)(c), STATS., the defendant is entitled to withdraw the plea under § 971.08(2) if the State does not prove that the omission was harmless (that is, does not prove that the defendant in fact had an understanding of the potential for deportation when entering the plea) and if the requirements of § 971.08(2) are met. *See State v. Chavez*, 175 Wis. 2d 366, 498 N.W.2d 887 (Ct. App. 1993), and *State v. Lopez*, 196 Wis. 2d 725, 730–31, 539 N.W.2d 700, 702 (Ct. App. 1995).

Rodriguez does not contend that the trial court did not comply with the requirements of § 971.08, STATS., and he does not challenge the trial court's determination that he has not established a prima facie violation of the statute. Rather, he asserts that the circumstances constituting manifest injustice are not circumscribed by the statute, and that his mistaken belief that he was a citizen means that he did not voluntarily, knowingly and intelligently enter his plea. We disagree. Rodriguez's misunderstanding of his citizenship status does not, under controlling case law, render his plea constitutionally infirm as not voluntarily, knowingly and intelligently entered.

As Rodriguez acknowledges, a defendant entering a guilty plea or a plea of no contest has the constitutional right to be informed of the direct consequences of the plea, but not of the collateral consequences, *see Warren*, 219 Wis. 2d at 637, 579 N.W.2d at 708. In *Santos*, 136 Wis. 2d at 531–33, 401 N.W.2d at 858, we held that deportation is a collateral consequence of entering a plea, and "[l]ack of knowledge of the collateral consequences of a guilty plea does not affect the plea's voluntariness because knowledge of these consequences is not a prerequisite to entering a knowing and intelligent plea." Rodriguez contends, however, that *Santos* is not controlling because, at the time of the plea hearing in *Santos*, the deportation notice requirement in § 971.08(1)(c), STATS., had not taken effect. *See id.* at 531 n.3, 401 N.W.2d at 858. According to Rodriguez, now that such notice is statutorily mandated, the risk of deportation is no longer a collateral consequence in Wisconsin.

We rejected this same argument in *State v. Baeza*, 174 Wis. 2d 118, 125, 496 N.W.2d 233, 235–36 (Ct. App. 1993). We stated:

> Baeza also argues that the addition of sec. 971.08(1)(c) and (2), STATS., is a legislative mandate to make deportation consequences a *direct* consequence of a guilty plea, instead of a *collateral* consequence. As a direct consequence, Baeza asserts that the lack of knowledge of the deportation consequences affects whether the plea was voluntary and with an understanding of the charge and potential punishment. *See* sec. 971.08(1)(a). Baeza contends that then *Bangert* applies through sec. 971.08(1)(a).

After citing *Santos* and our holding there, we continued:

> The statutory mandate of sec. 971.08(1)(c), STATS., cannot transform this collateral consequence into a direct consequence of the plea. It can only recognize that this collateral consequence is of such importance that the defendant should be informed of its possibility. Because the possibility of deportation remains a collateral consequence, sec. 971.08(1)(a) is not implicated and *Bangert* is not applicable.

*Baeza*, 174 Wis. 2d at 125–26, 496 N.W.2d at 235–36.

Rodriguez discounts the significance of our ruling in *Baeza*, asserting it was unnecessary to the result because we ultimately held that Baeza was entitled to withdraw his plea under § 971.08(2), STATS. However, when an appellate court intentionally takes up, discusses and decides a question germane to, though not necessarily decisive of the controversy, such a decision is not dictum but is a judicial act of the court which it

thereafter recognizes as a binding decision. *State v. Holt*, 128 Wis. 2d 110, 123, 382 N.W.2d 679, 686 (Ct. App. 1985).

Rodriguez also questions the continuing validity of *Baeza*, claiming that in later cases—*State v. Issa*, 186 Wis. 2d 199, 519 N.W.2d 741 (Ct. App. 1994); *Chavez* and *Lopez*—we rejected our ruling in *Baeza* "that the two-part *Bangert* inquiry" did not apply to the deportation notice requirement of § 971.08(1)(c), STATS. We are not persuaded by this argument. None of these three later cases addressed whether the enactment of § 971.08(1)(c) makes deportation a collateral consequence of a conviction. Therefore, they do not in any way contradict our ruling in *Baeza* on that point. And, as we explained in *Lopez*, the three later cases are not inconsistent with *Baeza* regarding the proper procedure for establishing a remedy for a violation of § 971.08(1)(c). *See Lopez*, 196 Wis. 2d at 730–32, 539 N.W.2d at 702–03. More importantly, this court is without the power to overrule, modify or withdraw language from its published opinion. *See Cook v. Cook*, 208 Wis. 2d 166, 188–89, 560 N.W.2d 246, 255–56 (1997). We conclude that *Baeza* established that deportation is a collateral consequence of a guilty or no contest plea in spite of the notice required by § 971.08(1)(c).

Rodriguez also contends that his circumstances are distinguishable from those in *Santos* because he had an affirmative misunderstanding that he could not be deported rather than a lack of knowledge that deportation was a possibility for non-citizens. This is a significant distinction, according to Rodriguez, because if an accused is totally unaware of the possibility of deportation, it can be concluded that was not a factor in the consideration of whether to enter a plea, whereas in

497

his case his misunderstanding that he was a citizen was a factor in deciding to enter the plea.

Wisconsin case law does not support, under the circumstances of this case, a distinction between the lack of awareness of a collateral consequence and an affirmative misunderstanding about the possibility that a collateral consequence will occur. In *Birts v. State*, 68 Wis. 2d 389, 396, 228 N.W.2d 351, 355 (1975), the defendant claimed that his guilty plea was based on his mistaken understanding that he would be paroled sooner. The court concluded that the defendant's misunderstanding did not "render the plea involuntary or establish manifest injustice." *Id*. After referring to the necessity of being fully aware of the direct consequences of a plea, the court stated: "The important point here is that the alleged misunderstanding concerned indirect [collateral] consequences of the plea, defendant's parole rights, and that absolutely no commitment was made as to those rights. . . . His beliefs concerning his release time were the product of his own mind. . . ." *Id*. at 397, 228 N.W.2d at 355–56.

Rodriguez cites a number of cases from other jurisdictions in which, he asserts, a misunderstanding of the risk of deportation was grounds for allowing withdrawal of a plea. However, in these cases either the prosecutor made a misleading statement on the possibility of deportation at the plea hearing, *see, e.g., United States v. Russell*, 686 F.2d 35, 39, 41 (D.C. Cir. 1982) (one factor guiding court's exercise of discretion in deciding whether to permit withdrawal of plea is whether defendant's misunderstanding of collateral consequence is misinformation provided by prosecution or by defendant's own ignorance); or defense counsel gave incorrect information to the defendant on which the defendant relied, thus resulting in ineffec-

tive assistance of counsel. *See, e.g., Strader v. Garrison,* 611 F.2d 61, 64 (4th Cir. 1979) (although defense counsel does not have obligation to inform a client of collateral consequences of a plea, when counsel misinforms his client on the possibility of deportation and the client relies on that in entering a plea, the client is deprived of effective assistance of counsel). *See also United States v. Mora-Gomez,* 875 F. Supp. 1208, 1213 (E.D. Va. 1995); *People v. Correa,* 485 N.E.2d 307 (Ill. 1985); *Dugart v. State,* 578 So. 2d 789 (Fla. Dist. 4 Ct. App. 1991).

The cases from other jurisdictions are consistent with *Santos* and *Birts* and do not support reversal in this case. There is no evidence, and Rodriguez does not assert, that his belief that he was a citizen was based on any information provided by defense counsel or the prosecutor. Rather, as in *Birts,* it was his own inaccurate interpretation of experiences and information from other sources. This type of misunderstanding of the collateral consequences of a conviction does not render Rodriguez's plea constitutionally infirm, and the trial court therefore did not err in concluding that Rodriguez had not established a manifest injustice on this ground. This is the only ground on which Rodriguez argues that withdrawal of his plea is necessary to correct a manifest injustice. We therefore affirm.

*By the Court.*—Judgment and order affirmed.