75 P.3d 724

STATE of Hawai'i, Plaintiff–Appellee,

v.

Tommy G. MARTIN, Defendant–Appellant.

No. 24365.

Intermediate Court of Appeals of Hawai'i.

July 22, 2003.

Joyce K. Matsumori Hoshijo, Deputy Public Defender, on the briefs, for defendant-appellant.

Janet R. Garcia, Deputy Prosecuting Attorney, County of Hawai'i, on the briefs, for plaintiff-appellee.

WATANABE, Acting C.J., LIM and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

Defendant Appellant Tommy G. Martin (Martin) appeals from two Judgments entered in the District Court of the Third Circuit, Hamakua Division at South Kohala,[1] (district court) on May 16, 2001.[2] Martin entered no contest pleas to and was convicted of Resisting an Order to Stop a Motor Vehicle (Resisting an Order to Stop), in viola-

tion of Hawaii Revised Statutes (HRS) § 710–1027(1) (1993),[3] and Conditions of Operation and Registration of Motor Vehicles (No No–Fault Insurance), in violation of HRS § 431:10C–104(a) (Supp.2002).[4] Martin contends the district court erred when it denied his Motion to Withdraw Plea of Nolo Contendere (Motion to Withdraw Plea) to the charges. We conclude the district court erred in denying Martin's Motion to Withdraw Plea and, therefore, vacate the Judgments.

## I. BACKGROUND

On May 1, 2000, Martin was charged by complaint with Count I, Driving Under the Influence of Intoxicating Liquor in violation of HRS § 291–4(a)(1) (Supp.1999); Count II, Resisting an Order to Stop in violation of HRS § 710–1027(1) (1993); Count III, Driving While License Suspended or Revoked in violation of HRS § 286–132 (Supp.1999); Count IV, Application for Registration (failure to register vehicle) in violation of HRS § 286–41 (1993 & Supp.1999); Count V, Operation of a Vehicle Without a Certificate of Inspection in violation of HRS § 286–25 (1993); and Count VI, No No–Fault Insurance in violation of HRS § 431:10C–104(a) (Supp.2002).

Martin initially entered a not guilty plea. During pretrial proceedings, defense counsel

1. The Honorable Matthew S.K. Pyun presided.

2. In his Notice of Appeal filed June 18, 2001, Martin failed to comply with Hawai'i Rules of Appellate Procedure (HRAP) Rule 3(c)(2) by not stating in his Notice of Appeal the specific judgment, order or part thereof from which he was appealing and by not attaching a copy of the specific judgment or order as an exhibit to the notice. The police report numbers stated on the first page of the Notice of Appeal were for the Resisting an Order to Stop charge and for two of the dismissed charges. No report number for the No No–Fault charge was stated in the Notice of Appeal, and the Office of the Public Defender admitted such in a July 19, 2001 hearing before the district court. However, the Notice of Appeal did state that Martin was appealing the district court's decision "denying [Martin's] Motion to Withdraw Plea of Nolo Contendere and entering [Martin's] Plea of Nolo Contendere." We treat Martin's appeal as inclusive of the No No–Fault Insurance charge because HRAP Rule 3(c)(2) provides that "[a]n appeal shall not be

dismissed for informality of form or title of the notice of appeal."

3. HRS § 710–1027 (1993) reads as follows:

§ **710–1027 Resisting an order to stop a motor vehicle.** (1) A person commits the offense of resisting an order to stop a motor vehicle if the person intentionally fails to obey a direction of a peace officer, acting under color of the peace officer's official authority, to stop the person's vehicle.

(2) Resisting an order to stop a motor vehicle is a misdemeanor.

4. HRS § 431:10C–104(a) (Supp.2002) reads as follows:

§ **431:10C–104 Conditions of operation and registration of motor vehicles.** (a) Except as provided in section 431:10C–105, no person shall operate or use a motor vehicle upon any public street, road, or highway of this State at any time unless such motor vehicle is insured at all times under a motor vehicle insurance policy.

stated that Martin wished to plead no contest to Resisting an Order to Stop (Count II) and No No-Fault Insurance (Count VI). As to Count II, the defense requested that the State complete a presentence investigation regarding Martin's eligibility for a "DANC" (deferred acceptance of no contest) plea. As part of the plea agreement, the State agreed to not ask for incarceration and to dismiss the remaining four counts.

On October 5, 2000, the district court accepted Martin's no contest plea to No No-Fault Insurance and Resisting an Order to Stop. The following exchange took place:

THE COURT: Your name is Tommy Martin?

[MARTIN]: Yes, sir, Your Honor.

THE COURT: You've heard that your attorney has indicated that you're going to enter a plea to the no fault insurance?

[MARTIN]: Yes, sir I am.

THE COURT: Is that going to be a guilty plea?

[DEFENSE COUNSEL]: A no contest.

[MARTIN]: No contest sir.

THE COURT: He's told you that if you plead no contest, the Court will find you guilty?

[MARTIN]: Beg your pardon, Your Honor?

THE COURT: Your attorney told you that if you plead no contest, the Court's going to find you guilty?

[MARTIN]: Yeah. Yes, sir.

THE COURT: Okay. And he told you that—did he tell you that you're entitled to a trial?

[MARTIN]: Um, well, he told me that—like you mean like a jury trial, Your Honor?

THE COURT: Well, you're entitled to a trial.

[MARTIN]: Oh. Yes, he did, Your Honor.

THE COURT: And you're entitled to, at that trial, you can cross-examine the witnesses that the prosecution may–

[MARTIN]: Yes, he did, Your Honor.

THE COURT:—present. And you have the right to present witnesses on your own behalf. You understand that?

[MARTIN]: Yes, Your Honor.

THE COURT: And you have this right, even though you feel you're guilty.

[MARTIN]: Yes, Your Honor.

THE COURT: And if you enter a plea and you plead no contest, the only thing left for the Court to do is to sentence you.

[MARTIN]: I understand, Your Honor.

THE COURT: You understand that?

[MARTIN]: Yes, sir.

THE COURT: Okay. Did you take any medication or anything that would cause you to not understand everything that's happening this afternoon?

[MARTIN]: No, Your Honor.

THE COURT: Okay. To the charge of not having no fault insurance on December 26th, 1999, what is your plea?

[MARTIN]: No contest, Your Honor.

THE COURT: Okay. Based upon your plea of no contest, the Court will find you guilty. In the–

[DEFENSE COUNSEL]: Judge, we're asking for the DANC on the resisting order to stop.

THE COURT: Okay. We'll withhold–and this is all going to go to presentence, you said?

[PROSECUTOR]: Yes, sir.

THE COURT: Okay.

[PROSECUTOR]: The state's requesting that.

THE COURT: To the criminal charge resisting the order to stop, what is your plea?

[MARTIN]: No contest, Your Honor.

THE COURT: Okay. Based upon your plea of no contest, the Court will find you guilty. And with regard to the matter of sentencing, we will—

[DEFENSE COUNSEL]: Judge, we're asking for the imposition of DANC, so you're not supposed to find him guilty at this point. We'd ask that the matter, I guess, be addressed maybe in the presentence report to see if he qualifies.

THE COURT: Okay.

[DEFENSE COUNSEL]: Does that make sense?

[PROSECUTOR]: That makes perfect sense.

THE COURT: Okay. We will do that.

On December 7, 2000, the Presentence Diagnosis and Report regarding Martin was filed with the district court and distributed to the State and defense counsel.

On February 7, 2001, defense counsel informed the district court that he would be withdrawing as Martin's attorney; the district court granted the motion to withdraw.

On March 15, 2001, Martin appeared before the district court for sentencing without counsel. Martin informed the court that he had retained new counsel, but his new counsel could not attend the hearing because of a prior trial. The district court continued the sentencing.

On April 16, 2001, Martin filed a motion to dismiss for lack of speedy trial. On April 19, 2001, Martin appeared before the district court with his new defense counsel. Defense counsel informed the court that Martin wished to withdraw his no contest plea and proceed with his motion to dismiss. The district court told defense counsel to file a written motion to withdraw the plea, and the court set a hearing date of May 3, 2001 on the motions to withdraw the plea and to dismiss.

On May 2, 2001, Martin filed the Motion to Withdraw Plea. The motion's grounds were that Martin did not have a full and complete understanding that (1) the district court would not be bound by the terms of the plea agreement, (2) entry of the plea would waive Martin's rights to "a further trial of any kind," and (3) "there was a factual basis for the plea."

At the beginning of the May 16, 2001 hearing on the Motion to Withdraw Plea, Martin's counsel added an additional ground in support of the motion: "[Martin] did not have a fair comprehension of the nature of

the charge to which he entered his plea of no contest." Martin's counsel stated that Martin "would testify that he understood there was a difference between a petty misdemeanor and a full misdemeanor. That it was his understanding that the Resisting Order to Stop was something less than a full misdemeanor and not a full misdemeanor."

During the hearing, Martin testified about his recollection of the October 5, 2000 plea proceeding, stating, among other things, that: "a plea agreement is like if you have numerous charges, dat dey drop, um, some charges, and I guess you plead to whatevah charges dey like to expedite da case or somet'ing like dat"; he recalled his counsel informing him that Resisting an Order to Stop was a full misdemeanor "after da proceedings," but not during the plea proceedings; he did not recall if he had heard any conversation in the courtroom on the issue of the voluntary nature of the plea agreement; he understood the plea agreement to be that he would not get jail time, but he would receive a fine; he did not recall what charges were dropped, but stated, "I know was mostly traffic, and I t'ink, if I'm not mistaken, there was a total of six citations"; he understood that he was pleading no contest to Resisting an Order to Stop and No No–Fault Insurance; he did not remember explaining the factual basis for either charge to the district court; and about one month before the October 5 hearing, he recalled receiving, signing, and returning "a piece of paper with a plea agreement on it."[5] When asked what facts were the basis for the plea on the No No–Fault Insurance count, Martin stated, "I have no idea because, um, according from what I was told is dat, um, you know, I was operating a farm vehicle, and ... you not required undah da law to have no-fault insurance operating a farm vehicle."

Martin testified that he had met with his attorney "numerous" times prior to the plea hearing and he had reviewed the police reports "numerous" times and "several" times reviewed a "sheet" showing all the charges

5. In his opening brief, Martin points out that "[t]he record in this case does not reflect that a change of plea form was signed by Martin and entered into the record." Although this is true, the transcript corroborates Martin's entry of a no contest plea to both counts and the nature of the plea agreement.

against him. When asked if he had seen that the "sheet" stated that Resisting an Order to Stop was a misdemeanor, Martin stated, "Well, I didn't—I—I don't recall, to be truthful with you. I might have—might have overlooked it, but I don't recall seeing it in the police report where resisting an order stop—to stop is—da confusion now, Madam—Madam Prosecutor, is that, well, you know, I'm not an attorney so, I mean, where's da difference between da—which I found out latah da difference between da petty misdemeanor and a full misdemeanor." Martin testified he sat next to his counsel during the plea proceeding and understood that a plea agreement existed; the agreement included dismissal of some charges; the agreed-upon charges were dismissed; his counsel was asking for a "deferred acceptance" of the plea; the State was asking for a presentence investigation; the State was not asking for jail; and, since sentencing had not commenced, he did not know during the proceeding what sentence the district court would impose.

Following the presentation of evidence and argument, the district court denied Martin's Motion to Withdraw Plea, stating that Martin had "failed to provide the Court" with "sufficient . . . fair and just reasons to warrant the setting aside" of the plea.

Martin requested a ruling on the deferred acceptance of no contest plea. The district court denied the deferral because Martin had previously been convicted of a felony.

As part of his presentence allocution, Martin stated that he "didn't know [Resisting an Order to Stop] was a full misdemeanor 'til aftah, you know, I pleaded to da charge."

The district court accepted the no contest pleas and found Martin guilty of No No-Fault Insurance and Resisting an Order to Stop. On Count VI (No No-Fault Insurance), the district court imposed a fine of $500, a Driver's Education assessment of $7, administrative costs of $20, and a Criminal Injuries Compensation Fund assessment of $25. On Count II (Resisting an Order to Stop), the district court sentenced Martin to probation

for one year, imposing various related fines and conditions.

## II. STANDARDS OF REVIEW

### A. Denial of Pre–Sentence Motion to Withdraw Plea

In *State v. Gomes*, 79 Hawai'i 32, 897 P.2d 959 (1995), the Hawai'i Supreme Court set forth the applicable standard of review for appeals from the denial of a Hawai'i Rules of Penal Procedure (HRPP) Rule 32(d) motion made prior to the imposition of sentence:

This court has observed that a liberal approach is to be taken when a motion to withdraw a plea is made under HRPP Rule 32(d) before sentence is imposed. The court should grant the motion if the defendant has presented a fair and just reason for his request and the State has not relied upon the plea to its substantial prejudice.[6] . . . [T]he [trial] court's denial of the request is reviewed for abuse of discretion.

79 Hawai'i at 36, 897 P.2d at 963 (footnote not in original) (quoting *State v. Adams*, 76 Hawai'i 408, 411, 879 P.2d 513, 516 (1994)).

### B. Abuse of Discretion

 The trial court is vested with wide discretion to accept or refuse a nolo contendere plea, and the acceptance or refusal of a no contest plea is therefore reviewed for abuse of that discretion. The denial of an HRPP 32(d) motion to withdraw a plea of nolo contendere, or no contest, prior to the imposition of sentence is likewise reviewed for abuse of discretion. An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules of principles of law or practice to the substantial detriment of a party litigant.

*State v. Merino*, 81 Hawai'i 198, 211, 915 P.2d 672, 685 (1996) (internal quotation marks, citations, brackets, and footnote omitted).

---

**6.** In the instant case, the State does not contend it relied upon the plea to its substantial preju-

dice.

## C. Plain Error

■ Hawai'i Rules of Penal Procedure Rule 52(b) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Therefore, an appellate court "may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Davia*, 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998) (internal quotation marks omitted).

■ The appellate court "will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights." *State v. Vanstory*, 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (internal quotation marks omitted).

> This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

*State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993). "If the substantial rights of the defendant have been affected adversely, the error will be deemed plain error." *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998).

## III. DISCUSSION

### A. Applicable Hawai'i Rules of Penal Procedure

Hawai'i Rules of Penal Procedure Rule 11 provides in relevant part:

**Rule 11. Pleas.**

(a) *Alternatives.*

(1) IN GENERAL. A defendant may plead not guilty, guilty or nolo contendere. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or nolo contendere or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.

. . . .

(b) *Nolo contendere.* A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

(c) *Advice to defendant.* The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that he understands the following:

(1) the nature of the charge to which the plea is offered; and

(2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and

(3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

(d) *Insuring that the plea is voluntary.* The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or of threats or promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from any plea agreement.

(e) *Plea agreement.*

(1) IN GENERAL. The prosecutor and counsel for the defendant, or the defendant when acting pro se, may enter into plea agreements that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to an included or relat-

ed offense, the prosecutor will take certain actions or adopt certain positions, including the dismissal of other charges and the recommending or not opposing of specific sentences or dispositions on the charge to which a plea was entered. The court may participate in discussions leading to such plea agreements and may agree to be bound thereby.

(2) NOTICE OF PLEA AGREEMENT. Any plea agreement shall be disclosed by the parties to the court at the time the defendant tenders his plea. Failure by the prosecutor to comply with such agreement shall be grounds for withdrawal of the plea.

(3) WARNING TO DEFENDANT. Upon disclosure of any plea agreement, the court shall not accept the tendered plea unless the defendant is informed that the court is not bound by such agreement, unless the court agreed otherwise.

. . . .

(f) *Determining accuracy of plea.* Notwithstanding the acceptance of a plea of guilty, the court shall not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

With regards to a motion to withdraw a plea, HRPP Rule 32(d) provides:

**Rule 32. Sentence and judgment.**

. . . .

(d) *Withdrawal of plea of guilty.* A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence shall set aside the judgment of conviction and permit the defendant to withdraw his plea.

**B. Fair and Just Reason for Withdrawal**

Our inquiry is whether the district court abused its discretion in concluding Martin did not present grounds in support of his Motion to Withdraw Plea that amounted to a "fair and just reason" for withdrawal.

In *State v. Jim,* 58 Haw. 574, 574 P.2d 521 (1978), the Hawai'i Supreme Court stated:

A defendant does not have an absolute right to withdraw his guilty plea.... [W]here the motion is presented to the trial court before the imposition of sentence, a more liberal approach is to be taken, and the motion should be granted if the defendant has presented a fair and just reason for his request and the State has not relied upon the guilty plea to its substantial prejudice.

*Id.* at 575–76, 574 P.2d at 522–23.

The pertinent standard for denial of a presentence motion for withdrawal was further delimited in *State v. Gomes, supra.* Gomes was allowed to withdraw his plea pursuant to a motion, where the grounds for withdrawal included an exculpatory statement by a co-defendant. In its opinion, the supreme court specified the two bases for plea withdrawal:

An evidentiary hearing in conjunction with a defendant's HRPP Rule 32(d) motion facilitates the examination of two fundamental bases of demonstrating "fair and just reasons" for granting withdrawal of a plea: (1) the defendant did not knowingly, intelligently, or voluntarily waive his or her rights; or (2) changed circumstances or new information justify withdrawal of the plea.

79 Hawai'i at 37, 897 P.2d at 964.

In his Motion to Withdraw Plea, Martin stated he did not have a full and complete understanding that the district court would not be bound by the plea agreement; that by entering his plea of no contest, he was waiving his right to any further trial; and that there was a factual basis for the plea.

█ Hawai'i Rules of Penal Procedure Rule 11(e)(3) required the district court to inform Martin that the court was not bound by the plea agreement that was the basis of Martin's no contest plea. The district court erred in not so informing Martin before it accepted his plea. This error, however, is harmless because the district court sentenced Martin pursuant to the plea agreement. Martin does not contend otherwise.

█ The record does not support Martin's second ground that he did not understand he was waiving his right to trial. Prior to the

district court's accepting Martin's no contest plea, the following exchange took place between Martin and the court:

> THE COURT: Your attorney told you that if you plead no contest, the Court's going to find you guilty?
>
> [MARTIN]: Yeah. Yes, sir.
>
> THE COURT: Okay. And he told you that–did he tell you that you're entitled to a trial?
>
> [MARTIN]: Um, well, he told me that–like you mean like a jury trial, Your Honor?
>
> THE COURT: Well, you're entitled to a trial.
>
> [MARTIN]: Oh. Yes, he did, Your Honor.
>
> THE COURT: And you're entitled to, at that trial, you can cross-examine the witnesses that the prosecution may–
>
> [MARTIN]: Yes, he did, Your Honor.
>
> THE COURT:-present. And you have the right to present witnesses on your own behalf. You understand that?
>
> [MARTIN]: Yes, Your Honor.
>
> THE COURT: And you have this right, even though you feel you're guilty.
>
> [MARTIN]: Yes, Your Honor.
>
> THE COURT: And if you enter a plea and you plead no contest, the only thing left for the Court to do is sentence you.
>
> [MARTIN]: I understand, Your Honor.
>
> THE COURT: You understand that?
>
> [MARTIN]: Yes, sir.

Furthermore, during the hearing on the Motion to Withdraw Plea, when asked whether he understood that there would be no trial if he pleaded no contest, Martin responded, "I believe da judge informed me at some point, you know, in time."

As to Martin's third ground, that a factual basis for his no contest plea was required, the supreme court has stated:

> We hold that, by its plain language, HRPP 11(f) applies only to guilty pleas and that, with respect to pleas of nolo contendere (*i.e.*, no contest), the trial court is not required to make "such inquiry as shall satisfy it that there is a factual basis for the plea."

*Merino*, 81 Hawai'i at 219, 915 P.2d at 693. Here, given the no contest plea, no factual basis was required.

■ Although not in his written Motion to Withdraw Plea, Martin asserted at the hearing on the motion that he was not personally addressed by the district court to determine whether he understood the nature of the charge to which his plea was offered and the maximum penalty that would have been imposed for the offense to which his plea was offered, as required by HRPP 11(c)(1) and (2). Other than asking Martin what his plea was to "the criminal charge resisting the order to stop," the district court did not personally address Martin on the nature of the charge or its maximum penalty and, therefore, did not comply with HRPP Rule 11(c)(1) and (2). Prior to entering his plea of no contest to Resisting an Order to Stop, Martin was not informed by the district court that the offense was a misdemeanor that carried a sentence of up to one year in jail and/or a $2,000 fine and/or up to one year of probation (HRS §§ 706–663 (1993),[7] 706–640 (Supp.2002),[8] 706–623 (Supp.2002)[9]). Addi-

---

7. HRS § 706–663 (1993) reads as follows:

> **§ 706–663 Sentence of imprisonment for misdemeanor and petty misdemeanor.** After consideration of the factors set forth in sections 706–606 and 706–621, the court may sentence a person who has been convicted of a misdemeanor or a petty misdemeanor to imprisonment for a definite term to be fixed by the court and not to exceed one year in the case of a misdemeanor or thirty days in the case of a petty misdemeanor.

8. HRS § 706–640 (Supp.2002) reads in relevant part:

> **§ 706–640 Authorized fines.** (1) A person who has been convicted of an offense may be sentenced to pay a fine not exceeding:
>
> . . . .
>
> (d) $2,000, when the conviction is of a misdemeanor;
>
> (e) $1,000, when the conviction is of a petty misdemeanor or a violation[.]

9. HRS § 706–623 (Supp.2002) reads in relevant part:

> **§ 706–623 Terms of probation.** (1) When the court has sentenced a defendant to be placed on probation, the period of probation shall be as follows, unless the court enters the

tionally, Martin was not informed of the nature and maximum penalties of the No No Fault Insurance charge.

We conclude that Martin presented a fair and just reason to withdraw his plea of no contest in that the district court did not comply with HRPP Rule 11(c)(1) and (2) in directly addressing Martin to determine whether Martin understood the nature of the charges and their maximum penalties. *Davia*, 87 Hawai'i at 254–55, 953 P.2d at 1352–53. The district court, therefore, abused its discretion in denying Martin's Motion to Withdraw Plea. Furthermore, we cannot conclude this error was harmless just because Martin was not sentenced to any jail time pursuant to the plea agreement. Martin was sentenced to the maximum period of one year of probation, as opposed to a maximum term of six months had the offense been a petty misdemeanor. HRS § 706–623(1). Additionally, the district court levied a $500 fine against Martin. Prior to accepting his plea, the district court did not inform Martin of the maximum possible fine.

### C. Plain Error

 Martin alleges one point of error on appeal not raised before the district court: the district court failed to inform Martin of the immigration consequences of his plea.

> reason therefor on the record and sentences the defendant to a shorter period of probation:
> . . . .
> (c) One year upon conviction of a misdemeanor . . . ; or

Although the district court failed to so inform Martin as required by HRPP Rule 11(c)(5), the error did not adversely affect substantial rights of Martin or seriously affect the fairness, integrity, or public reputation of judicial proceedings. *Davia*, 87 Hawai'i at 253, 953 P.2d at 1351; *Vanstory*, 91 Hawai'i at 42, 979 P.2d at 1068.

Martin does not allege any harm may accrue to him because of the district court's failure to comply with HRPP Rule 11(c)(5). This failure certainly falls short of plain error. In fact, the Offender Identification Report and the OBTS/CCH Transmittal/Arrest Report (dated December 27, 1999) both indicate that Martin is a United States citizen.

### IV. CONCLUSION

Accordingly, the two Judgments entered in the district court on May 16, 2001 are vacated, and this case is remanded to the district court for further proceedings.

> (d) Six months upon conviction of a petty misdemeanor.